OPINION
{¶ 1} Appellant Nicole Moore appeals from the judgment of the *Page 2 
Montgomery County Common Pleas Court, Juvenile Division, granting permanent custody of her five children to Montgomery County Children's Services. She contends that the trial court erred by denying her request for a continuance of the custody hearing. She further contends that the decision is not supported by the evidence.
 {¶ 2} Appellant Gloria Turman, the maternal grandmother, appeals from the decision of Juvenile Court denying her motion for legal custody of her five grandchildren. Turman contends that the evidence does not support the order of the court relating to her motion for custody.
 {¶ 3} We conclude that the record contains competent and credible evidence upon which the trial court could appropriately base its decision to deny custody to Turman and to grant permanent custody to MCCS. We further conclude that the trial court did not abuse its discretion by denying Moore's request for a continuance. Accordingly, the judgment of the trial court is Affirmed.
 I {¶ 4} Montgomery County Children's Services became involved with Z.R., T.M., T.R., A.M. and T.M. in 2002 when the agency developed a safety plan aimed at assisting Nicole Moore, the mother of the children, and her current husband, the stepfather of the children, with issues of alcohol abuse.
 {¶ 5} On April 4, 2004, Montgomery County Children's Services removed Z.R., T.M., T.R., A.M. and T.M. from the home, and filed an abuse and dependency complaint upon allegations of domestic violence and alcohol abuse. The juvenile court granted temporary custody to MCCS. On July 1, 2004, the children were adjudicated dependent *Page 3 
and the children remained in the temporary custody of the agency.
 {¶ 6} MCCS established a case plan for Moore and her husband designed to address the issues of substance abuse and domestic violence. The Moores continued to abuse alcohol and engage in incidents of domestic violence. Therefore, on July 21, 2005, MCCS filed a motion for permanent custody of the children. On May 21, 2006, Gloria Turman, the maternal grandmother of the children filed a complaint seeking legal custody of all five children.
 {¶ 7} A hearing was started on March 29, 2006, at which time the attorney for MCCS noted that some of the children had expressed a wish to remain with their mother or to live with their grandmother; wishes which conflicted with the recommendation of the GAL that the court grant custody to MCCS. The parties all agreed that a continuance was needed in order to appoint counsel to represent the children. The hearing was continued until June 9, 2006. However, at the start of that hearing, the attorney for the children asked for another continuance on the basis that he had spoken to only two of the five children. The attorneys for Moore and the biological father joined in the motion on the basis that their clients were not present.[1] Turman also joined in the motion. The motion was denied, and the hearing was conducted on that date.
 {¶ 8} Following the hearing, the magistrate denied Turman's request for custody, and instead, granted permanent custody to MCCS. Turman and Moore filed joint objections in which they argued that the magistrate's decision was not supported by the evidence. The objections were overruled. Moore and Turman both appeal. *Page 4 
 II {¶ 9} Moore's First Assignment of Error states as follows:
 {¶ 10} "THE TRIAL COURT ERRED IN OVERRULING THE MOTION FOR CONTINUANCE REQUESTED PRIOR TO THE HEARING."
 {¶ 11} Moore contends that the trial court should have granted the motions for continuance as requested at the time of the hearing. In support, she notes that the attorney for the children had not been able to interview all of the children prior to the hearing. Therefore, she argues that it was impossible for the attorney to adequately represent the interests of the children.
 {¶ 12} A trial court has broad discretion when ruling on a motion for a continuance, and an appellate court will not reverse a trial court's grant or denial of such a motion absent an abuse of discretion. In reS.R., Franklin App. No. 05AP-1223, 2006-Ohio-2273, ¶ 8. We begin by noting that Moore failed to raise this issue in her objections to the magistrate's decision. We further note that the attorney for the children has not filed an appeal in this matter. Additionally, from our review of the record, the attorney appointed for the children, as well as the court, and all other parties, were aware of which children had expressed a desire to live with Moore and/or Turman. Thus, the attorney was capable of presenting this information adequately. Therefore, we cannot say that the magistrate abused its discretion in denying the motion to continue.
 {¶ 13} Of more importance to us, is the fact that the attorney adequately represented the interests of the children during the hearing. A review of the record demonstrates that counsel was permitted to adequately cross-examine all witnesses and was not denied the opportunity to present evidence. As stated above, the court and all *Page 5 
parties were aware of the fact that the older children had expressed a desire to remain with their mother or to live with Turman. Furthermore, had the attorney for the children felt that their interests were prejudiced by the denial of the motion, he could have filed an appeal. Moreover, Moore has failed to state how she was prejudiced by the denial of the continuance. Based upon this record, we cannot find any prejudice stemming from the denial of the motion to continue.
 {¶ 14} Moore's First Assignment of Error is overruled.
 III {¶ 15} Moore's Second Assignment of Error provides as follows:
 {¶ 16} "THE DECISION OF THE TRIAL COURT IN GRANTING PERMANENT CUSTODY TO THE AGENCY IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ l7} Moore claims that the trial court's decision regarding custody is not supported by the evidence in the record. In support, she argues that the trial court erred in finding that the children cannot be placed with her within a reasonable time, and by finding that permanent custody to MCCS is in the best interest of the children.
 {¶ 18} In a proceeding for the termination of parental rights, all of the trial court's findings must be supported by clear and convincing evidence. R.C. 2151.414. A judgment of a trial court with regard to permanent custody will not be reversed as against the manifest weight of the evidence if the record contains competent, credible evidence upon which the court could have formed a firm belief or conviction that the essential statutory elements for granting permanent custody to the agency have been *Page 6 
established. In re A.U., Montgomery App. No. 22287, 2008-Ohio-187, ¶ 9.
 {¶ 19} As a preliminary matter, we note that the children had been in MCCS's temporary custody for at least twelve months before the agency filed for permanent custody. Therefore, it was not necessary for the trial court to find, as it did, that the children could not be placed with either parent within a reasonable time. In re C.W.,104 Ohio St. 3d 163, 166-167, 2004-Ohio-6411, ¶ 21. The court needed only to determine whether it is in the child's best interest to be placed with the agency. R.C. 2151.414(B)(1)(d).
 {¶ 20} R.C. 2151.414(D) sets forth the factors a court must consider when determining whether granting permanent custody to a public children's services agency is in the best interest of the child:
 {¶ 21} "In determining the best interest of a child at a hearing held pursuant to division (A) of this section * * *, the court shall consider all relevant factors, including, but not limited to, the following:
 {¶ 22} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 23} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 24} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period * * *; *Page 7 
 {¶ 25} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 26} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 27} From our review of this record it appears that the children are bonded to their mother and that at least two of the children have expressed a desire to remain with her. However, the evidence in the record does not support her claim that their best interest would be served by remaining in her custody.
 {¶ 28} Prior to MCCS taking custody, the children were repeatedly exposed to incidences of domestic violence between Moore and her current husband. Even after the agency intervened, the incidents of violence and alcohol abuse continued despite the fact that the agency provided access to treatment programs. At least two incidents of domestic violence occurred in the presence of the children after the agency assumed temporary custody.
 {¶ 29} In addition to the fact that Moore continues to abuse alcohol, the evidence shows that her home is dirty and roach infested. Further, she continues to smoke in the presence of the children despite the fact that one child, A.M., cannot be around a smoke-filled environment, due to repeated bouts with pneumonia, which has resulted in the scarring of her lungs.
 {¶ 30} We also note that the trial court found that Moore had placed the children at "substantial risk of harm two or more times due to alcohol," and that she has been arrested numerous times for domestic violence and alcohol abuse. *Page 8 
 {¶ 31} As noted above, the children had been in the custody of MCCS for twelve or more months prior to the hearing, and the evidence demonstrates that absent a grant of permanent custody to the agency, the children could not be placed in a legally secure permanent situation.
 {¶ 32} The report of the Guardian Ad Litem as well as the testimony presented at the hearing support a finding that granting permanent custody to the agency is in the best interest of the children. Accordingly, Moore's second Assignment of Error is overruled.
 IV {¶ 33} Turman's sole assignment of error is as follows:
 {¶ 34} "THE TRIAL COURT ERRED IN ORDERING PERMANENT CUSTODY TO MONTGOMERY COUNTY JOB AND FAMILY SERVICES BECAUSE THE EVIDENCE WAS NOT ESTABLISHED BY CLEAR AND CONVINCING EVIDENCE AND THE COURT'S HOLDING WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."
 {¶ 35} Turman contends that the evidence in this case mandated an award of permanent custody to her. Specifically, she claims that the evidence demonstrates that the children are bonded to her, that she has provided suitable housing for them, and that the children wish to live with her, with their mother, or with both of them.
 {¶ 36} From our review of the transcript, we agree that the children appear to be bonded with Turman, and that the older children have expressed a desire to remain with their mother or live with Turman. The record also supports a finding that Turman has *Page 9 
adequate housing for the children. Nevertheless, for the reasons set forth below, we agree with the decision of the trial court.
 {¶ 37} There is evidence in the record that Turman is not employed, and that she receives $706 per month in Social Security Disability benefits. Of that amount, she spends $650 per month for rent. At the time of the hearing, Turman's telephone service had been terminated due to non-payment of her bill. The trial court, based upon this evidence, determined that Turman did not have adequate financial resources to support the children.
 {¶ 38} The record also shows that Turman, who was 55 years old at the time of the hearing, has smoked cigarettes since she was seven years old. Turman suffers from emphysema and asthma, and has not been able to cease smoking despite the advice of her doctors that she quit. Based upon this evidence, the trial court determined that Turman's smoking would create an unhealthy environment for the children.
 {¶ 39} Additionally, Turman testified that if she is granted custody of the children, she intended to wait a year and move back to Wisconsin. She further testified that after living for a period of time in Wisconsin, she intended to move to Arizona. She also intimated that she might give the children back to her daughter. She further testified that she would rely on the parents of the children to help care for the kids. This testimony supports the trial court's finding that Turman would not provide a legally secure permanent placement.
 {¶ 40} The Guardian Ad Litem filed a report recommending that the trial court award permanent custody to MCCS. In addition to the above-cited evidence, the GAL noted that Turman's residence was "dirty and sparsely furnished." The GAL confirmed *Page 10 
that Turman had indicated her intent, upon taking custody of the children, to turn the kids over to their mother.
 {¶ 41} Finally, we note that the record shows that Turman has a significant criminal record. Turman was convicted in 1972 of shooting to wound a person. In 1993, she was convicted of welfare fraud, grand theft and carrying a concealed weapon. The record indicates that she failed to complete her probation for the CCW and grand theft convictions.
 {¶ 42} We conclude that while the children seem bonded with Turman, the evidence in this record provides ample support for the decision of the trial court to deny her request for custody. There is competent evidence in this record supporting the trial court's finding that it was in the best interest of the children to grant permanent custody to MCCS. Accordingly, Turman's sole assignment of error is overruled.
 III {¶ 43} Both of Moore's assignments of error, and Turman's sole assignment of error, having been overruled, the judgment of the trial court is Affirmed.
BROGAN and DONOVAN, JJ., concur.
Copies mailed to:
Mathias H. Heck, Jr.
Johnna M. Shia
Mia Wortham Spells
Jay A. Adams
Hon. Nick Kuntz
[1] The biological father of the children is not involved in this appeal. *Page 1