[Cite as *In re K.W.*, 2014-Ohio-4606.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
### CLARK   COUNTY

In The Matter Of:

      K.W., D.W., Jr., and J.W.

Appellate Case No. 2013-CA-107

Trial Court Case Nos. 2012-474, 2012-475,  2012-476

(Juvenile Appeal from
 Common Pleas Court)

· · · · · · · · · · ·

## O P I N I O N

Rendered on the 17th day of October, 2014.

· · · · · · · · · · ·

RYAN A. SAUNDERS, Atty. Reg. #0091678, Clark County Prosecutor's Office, 50 East Columbia Street, Suite 449, Springfield, Ohio 45502
      Attorney for Appellee, Clark County Dept. Of Family & Children Services

RICHARD L. KAPLAN, Atty. Reg. #0029406, Post Office Box 751192, Dayton, Ohio 45475
      Attorney for Appellant, A.W.

· · · · · · · · · · · ·

HALL, J.,

**{¶ 1}** The mother of K.W., D.W. Jr., and J.W. appeals a juvenile court's decision to terminate her parental rights and commit the children to the permanent custody of the Clark County Department of Job and Family Services (CCDJFS). Finding no error, we affirm.

# I. BACKGROUND

{¶ 2}    Mother came to the attention of CCDJFS in December 2011 after she and her newborn, J.W., tested positive for marijuana. CCDJFS began working with Mother, and a case plan was assigned to her in February 2012. The next month, CCDJFS learned of a domestic-violence incident between Mother and her boyfriend, S.F., in which he knocked over a coffee table onto the children and later kicked it into the face of one child, and learned that a domestic-violence incident had occurred earlier that March with the father of two of the children, D.W., Sr. It also learned that in 2010 and 2011 there had been several other domestic-violence incidents between Mother and S.F. and Mother and D.W. Sr.   An agreed protective supervision order for the children was entered in April, and after another domestic-violence incident the following month, CCDJFS sought and received an emergency temporary shelter care order, which allowed the agency to remove the children from their home. The children were placed in a foster home, and the trial court named a court appointed special advocate (CASA) representative to be the children's guardian ad litem (GAL). In October, the court committed the children to the temporary custody of CCDJFS.

{¶ 3}    CCDJFS moved for permanent custody in May 2013. Over a four-day trial, the court heard testimony from Mother, Mother's grandmother, the children's foster father, the clinical counselor who saw Mother at Mental Health Services of Clark County, the psychologist who evaluated Mother, the CASA/GAL, and Mother's social worker's supervisor. The social worker herself was not called to testify. During the trial, though, Mother moved for a continuance to obtain her testimony because the supervisor could not answer questions put to her about matters recorded in the social worker's notes. The trial court denied the motion after counsel for

Mother conceded that the notes themselves contained the sought-after information and CCDJFS stipulated to the notes admission. Also during the trial, Mother moved the court to order the psychologist who had evaluated her to update his evaluation, arguing that the original 11-month-old evaluation failed to reflect her current condition. The court denied this motion too, saying that it would consider the evaluation's age in its decision.

{¶ 4}   In November 2013, the trial court granted CCDJFS permanent custody of the children, who were then 1, 2, and 3 years old, and terminated all parental rights. As to the children's fathers, the court found that they had never been part of their children's lives and had no interest in being involved. Mother, the court found, had failed to remedy the problems that had caused the children's initial removal from their home and had demonstrated a lack of commitment and dedication to the children by regularly failing to support them. The court further found that the children could not be placed with Mother within a reasonable time or should not be placed with her and found that it was in the children's best interests for CCDJFS to have permanent custody.

{¶ 5}   Mother appealed.

## II. ANALYSIS

{¶ 6}   Mother assigns three errors to the juvenile-court proceedings. The first assignment of error alleges that the juvenile court's permanent-custody decision is against the manifest weight of the evidence. The second alleges that the court erred by not continuing the trial to obtain the testimony of Mother's social worker and also alleges that the court erred by not ordering an updated psychological evaluation. The third assignment of error alleges that trial counsel rendered Mother ineffective assistance.

## A. The Permanent-Custody Decision

{¶ 7} "In a proceeding for the termination of parental rights, all of the court's findings must be supported by clear and convincing evidence." *In re M.S.*, 2d Dist. Clark No. 2008 CA 70, 2009-Ohio-3123, ¶ 15, citing R.C. 2151.414(E). "A reviewing court will not overturn a court's grant of permanent custody to the state as being contrary to the manifest weight of the evidence 'if the record contains competent, credible evidence by which the court could have formed a firm belief or conviction that the essential statutory elements * * * have been established.' " *In re R.L.*, 2d Dist. Greene Nos. 2012CA32, 2012CA33, 2012-Ohio-6049, ¶ 17, quoting *In re A.U.*, 2d Dist. Montgomery No. 22287, 2008-Ohio-187, ¶ 9. We review the trial court's judgment to see whether the court abused its discretion. *See In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 48.

{¶ 8} This case is controlled by the statute governing the disposition of a dependent child, R.C. 2151.353, which provides in part that a court may commit the child to the permanent custody of a public children services agency if the court finds, one, that "the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent" (the parental-placement finding) and, two, that "the permanent commitment is in the best interest of the child" (the best-interest finding). R.C. 2151.353(A)(4). Mother challenges the trial court's findings on both of these elements.

### 1. *The parental-placement finding*

{¶ 9} R.C. 2151.414 requires a court to find that a child cannot be placed with a parent within a reasonable time or should not be placed with a parent if the court determines by clear and convincing evidence that "[f]ollowing the placement of the child outside the child's home

and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home." R.C. 2151.414(E)(1). In making this determination, the court must consider the parents' use of the "medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties." *Id*. A court must also make the parental-placement finding if, as to each parent, "[t]he parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child." R.C. 2151.414(E)(4).

{¶ 10} The trial court here determined that both of the above situations exist in this case. The court found that CCDJFS engaged in reasonable case planning and made diligent efforts to assist Mother to remedy the conditions that caused the children to be removed. Specifically, CCDJFS prepared a case plan with the goal of reunification that had reasonable objectives and that set forth services that, if completed, would have helped Mother achieve the goal. But the court found that Mother failed continuously and repeatedly to substantially remedy the problem conditions. Although medical, psychiatric, psychological, and other social and rehabilitative services and material resources were made available to Mother, she did not follow through with any of the services, which her medical, psychological, and psychiatric records all show, the court noted. The court pointed out that the voluminous records of McKinley Hall (where Mother was to receive drug and alcohol treatment), Mercy Reach (where Mother received some drug and

alcohol treatment), Wellspring (a counseling center where Mother had two assessments and was discharged), and Mental Health Services of Clark County (where Mother was to receive treatment for her mental health issues) all show that Mother would schedule appointments, assessments, sessions, or treatments but fail to attend them. This shows, concluded the court, that her needs have not been addressed. The court also concluded that Mother lacked commitment to her children, finding that she failed to attend visitations with them and failed to attend their many medical appointments.

{¶ 11} The only argument that Mother asserts against the court's parental-placement finding is that she completed at least some of her case plan. We will explain later why this argument fails, in our discussion of the best-interest finding.

{¶ 12} We determine that the trial court reasonably concluded, based on clear and convincing evidence, that the children cannot be placed with Mother within a reasonable time or should not be placed with her.

## 2. *The best-interest finding*

{¶ 13} R.C. 2151.414 provides that in finding that "the permanent commitment is in the best interest of the child" a court must consider all relevant factors, including the statutory factors listed in division (D) of the section: "(1) the interaction and interrelationship of the child with the child's parents, relatives, foster parents and any other person who may significantly affect the child; (2) the wishes of the child; (3) the custodial history of the child * * *; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any of the factors in R.C. 2151.414(E)(7) through (11) are applicable." *In re S.J.*, 2d Dist. Montgomery No. 25550,

2013-Ohio-2935, ¶ 15. Here, the trial court considered the relevant factors. The court found that the children have had no regular and meaningful contact with their biological family and that there is no safe, appropriate, harmonious and loving relationship between the children and the children's parents or extended family. The court also found that the wishes of the children, as expressed by the GAL, indicate a strong desire to be placed in a loving, secure, and permanent home, which, said the court, Mother cannot provide. The court noted that the children have lived in legal limbo for many months and would benefit greatly from a permanent, secure home, and it found that there are no known or interested relatives on either side of the family that can care for the children. Because Mother has not substantially remedied the conditions that caused the children's removal, said the court, there is no probability that she will be able to provide a safe, secure, and appropriate home for the children any time soon. Beyond the statutory factors, the court found a reasonable probability that the children will be adopted. The court also found that not returning the children to Mother posed no significant risk of harm to the children. Rather, said the court, the evidence clearly shows that permanent removal from Mother would significantly benefit the children. The court also noted that the GAL recommended that CCDJFS be given permanent custody.

{¶ 14} Mother challenges the finding that the children are adoptable based on the proposition that expert testimony is necessary on the matter of adoptability. Here, the children's foster father, the GAL, and the CCDJFS supervisor all testified that the children would likely be adopted. Mother says that evidence of a child's adoptability must come from an expert who places children for adoption, and that none of these witnesses is such an expert, but she cites no law that supports this proposition. We are skeptical that expert testimony is needed to establish a

child's adoptability. Expert testimony is typically required if specialized knowledge is required to reach a conclusion on a matter. *See* Evid.R. 702(A); *Jones v. Hawkes Hosp. of Mt. Carmel*, 175 Ohio St. 503, 196 N.E.2d 592 (1964), paragraph one of the syllabus. We do not think that it takes any special knowledge to conclude that children are likely to be adopted who the foster father called "wonderful, adoring, [and] loving," (Day 2, Tr. 112), and who the GAL noted are "young" and "have no major mental health, delays, that kind of thing, and * * * [have] shown that they can bond and attach with their foster parents and their extended family," (Day 3, Tr. 45-46). Mother did not object at trial to the admission of this evidence, waiving all but plain error. *See* Evid.R. 103(A)(1), (D). We see no plain error.

{¶ 15} Mother also takes issue with the finding that the children have had no meaningful contact with her and the finding that no loving relationship exists between the children and her. Although Mother attended roughly three-quarters of her scheduled visits with the children, the GAL testified that, during those visits, Mother had little interaction with the children. Also, the GAL's written reports say that, at the end of at least one visit, when the foster father arrived to pick up the children one of them ran towards the foster father and that the older two children call their foster parents "Paw-Paw" and "Mom." Further, the GAL reports say that one of the children has told the foster parents that he wants them to be his parents. Given this evidence, the trial court could have reasonably concluded that, though Mother had contact with and loved the children, the nature and quality of the contact and the children's feelings toward Mother did not compel the conclusion that denial of permanent custody is in the children's best interest.

{¶ 16} Regarding her ability to provide a home for the children, Mother points out that her grandmother testified that she would help Mother care for the children. But her

grandmother's testimony shows only that her *grandmother* has the ability to provide a home for the children. It does not show Mother's ability to do so. *Compare In re T.J.*, 2d Dist. Montgomery No. 25022, 2012-Ohio-3399, ¶ 20 (concluding that there was competent and credible evidence to support the trial court's conclusion that mother had demonstrated a lack of commitment to her child, including evidence showing that grandmother not mother worked with the child and the GAL's testimony that "the [m]other has demonstrated a lack of commitment toward the child by abdicating all parental duties to her mother").

{¶ 17} Mother next challenges the evidence from the GAL. Mother says that the GAL never testified, but based on the trial transcript, we find that the GAL/CASA representative (Andrea Kenerly McCrory) testified on the third day of trial and was cross-examined. Mother also contends that the trial court should not have relied on the GAL's reports because they are not evidence, citing in support our opinion in *In re Alfrey*, 2d Dist. Clark No. 01CA0083, 2003-Ohio-608. But in that case we did not say that a GAL's report is not evidence; we said that it "is not *a matter of* evidence." (Emphasis added.) *In re Alfrey* at ¶ 23. It is true that, " '[o]rdinarily, a GAL's report is not considered evidence.' " *Pettit v. Pettit*, 12th Dist. Fayette No. CA2011-08-018, 2012-Ohio-1801, ¶ 80, quoting *In re Daneasha Sherman*, 3d Dist. Hancock Nos. 05-04-47, 05-04-48, 05-04-49, 2005-Ohio-5888, ¶ 29; *see also In re Robinson/Brooks Children*, 5th Dist. Stark No. 2004-CA-00094, 2004-Ohio-6142, ¶ 13 (saying that "a guardian ad litem's report should not be considered evidence"). This is because "[a] guardian ad litem is an agent of the court," *In re Alfrey* at ¶ 16, and in a permanent custody proceeding, a written report by the GAL is required by statute, *see* R.C. 2151.414(C), "to give the court information, in addition to that elicited at the hearing, to assist it in making sound decisions concerning

permanent custody placements," *In re Hoffman*, 97 Ohio St.3d 92, 2002-Ohio-5368, 776 N.E.2d 485, ¶ 13. A GAL report, then, "'is merely submitted as additional information for the court's consideration, similar to a pre-sentence investigation report in a criminal proceeding.'" *Pettit* at ¶ 80, quoting *In re Daneasha Sherman* at ¶ 29.

{¶ 18}    Finally, Mother challenges the trial court's finding that she failed to remedy the conditions that caused her children's removal. She points out that she did complete parts of her case plan, which is true. The problem is that she failed to complete the most important parts: she failed to follow through with mental-health treatment; she failed to complete drug-and-alcohol treatment and continued to take drugs; she failed to follow through with services that would directly help her children. We note too that "even where a parent has participated in his or her case plan and completed most or all of the plan requirements, a trial court may still properly determine that such parent has not substantially remedied the problems leading to agency involvement." *In re A.L.*, 5th Dist. Guernsey No. 11 CA 23, 2012-Ohio-481, ¶ 15; *see also In re W.A.*, 10th Dist. Franklin Nos. 06AP-485, 06AP-486, 2006-Ohio-5750, ¶ 17 ("Failure to complete significant aspects of a case plan, despite opportunities to do so, is grounds for terminating parental rights."). Based on competent and credible evidence, the trial court reasonably found that Mother failed continuously and repeatedly to substantially remedy the conditions that caused the children to be removed from her care. *Compare In re D.H.*, 2d Dist. Montgomery No. 25159, 2012-Ohio-4619, ¶ 49 (pointing out that, though mother claimed compliance with her case plan, the evidence showed that mother was not consistent in complying with the plan's requirements for housing, employment, therapy, and visitation).

{¶ 19}  "The right to parent one's children is a fundamental right. *Troxel v. Granville* (2000), 530 U.S. 57, 66, 120 S.Ct. 2054, 147 L.Ed.2d 49. However, government has broad authority to intervene to protect children from abuse and neglect." (Citations omitted.) *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, at ¶ 28. "Ultimately, the child's best interest must prevail." *In re Y.H.*, 8th Dist. Cuyahoga No. 88746, 2007-Ohio-3077, ¶ 31. Here, though Mother undoubtedly loves her children and has completed some parts of her case plan, the trial court's finding that granting permanent custody to CCDJFS is in the children's best interests is both reasonable and based on clear and convincing evidence.

{¶ 20}  The first assignment of error is overruled.

### B. The Motions for Continuance and Reevaluation

{¶ 21}  Mother alleges, in the second assignment of error, that the trial court should have continued the trial to obtain her social worker's testimony. "A trial court has broad discretion when ruling on a motion for a continuance, and an appellate court will not reverse a trial court's grant or denial of such a motion absent an abuse of discretion." (Citation omitted.) *In re Z.R.*, 2d Dist. Montgomery No. 22338, 2008-Ohio-2586, ¶ 12.

{¶ 22}  The CCDJFS supervisor who testified could not answer questions about matters recorded in case notes made by Mother's social worker. So Mother moved for a continuance to allow the social worker, who had not been subpoenaed, to come in and testify. (The social worker was pregnant around this time, and the record suggests that the reason she was not called was the imminent birth of her child.) Juv.R. 23 provides that a juvenile court may grant a continuance "only when imperative to secure fair treatment for the parties." Here, counsel for Mother explained to the trial court that she wanted to present specific conversations that she had had with

the social worker. But counsel conceded that what she was trying to prove was contained in the notes themselves, and CCDJFS stipulated to the notes admission. The trial court denied Mother's motion, expressing its bafflement at what counsel was urging:

> I don't quite understand why, if what you're trying to prove is something in the notes and they're agreeable to the admission of the notes, how could you get any better proof of that. It's firsthand, here it comes, here it is. They are their records. They're stipulating that's their records. They're stipulating they could be admissible, they should be read, they should be entered. I don't understand, anything else you could do beyond that. I won't grant the motion to set aside any certain time for another witness who's not here if what you're trying to prove is what's in the notes, and they're agreeable to the admission of the notes.

(Day 3, Tr. 110-111). Mother fails to convince us that the trial court's decision was unreasonable and an abuse of discretion.

{¶ 23} Mother also alleges that the trial court should have ordered the psychologist to update his 11-month-old evaluation of her. After talking with Mother and reviewing her treatment records, the psychologist's original evaluation concluded that she was not focused on correcting the problems in her life:

> It was my opinion that she was-had a history of problems with mood, had definitely had a problem with history with trust, which she openly acknowledged that she didn't trust anyone; that she had been involved with some problematic relationships, which numerous sources indicated; and that she was expressing, at that time, a desire to maintain an involvement with a person who had assaulted her

on at least I believe six different occasions.

She seemed to have no real awareness how those situations might be considered a negative impact on her children, focusing her energies on doing whatever it is she had to do to get Children Services out of her life by meeting expectations at whatever level were sufficient, but without understanding that this relationship with Children Services could be a collaborative, supportive one to truly address the problems.

(Day 2, Tr. 30-31). The psychologist "saw significant problems in her ability and willingness to maintain relationships, to use supports, and to address her own psychological needs in such a way as to change the situation that would allow her to be an independent, safe, and appropriate parent for her children." (*Id*. at 32).

{¶ 24} Mother was concerned that this evaluation failed to capture her (presumably improved) current condition. But the trial court assured her that it would appropriately weigh the psychological evaluation evidence: "I'll give it the weight it is entitled to. I don't find there's just cause for further evaluation. It's incumbent upon the department to prove its case. If their evidence is not sufficient, not relevant, not timely, not accurate, then they probably won't meet their burden." (*Id*. at 132). Furthermore, when the evaluating psychologist was asked how his original evaluation would be affected if he assumed that Mother had not completed any drug and alcohol treatment program, he said it would not change: "If she has not completed any substance use treatment program ever, and I'm not aware of any, then * * * it would further support the opinion that I offered 11 months ago that she has difficulties that need to be addressed." (*Id*. 55-56). And when asked the effect on his opinion of Mother's having five assessments and three

days of counseling, he said that this was not sufficient to correct her problems: "None of the research I'm familiar with indicate that that level of services" "is likely to be effective with the significant difficulties I believe exist." (*Id*. at 57).

{¶ 25} " '[T]he admission of evidence lies within the broad discretion of the trial court * * *.' " *In re J.M.*, 2d Dist. Montgomery No. 22836, 2009-Ohio-3950, ¶ 29, quoting *State v. Conway*, 109 Ohio St.3d 412, 848 N.E.2d 810, 2006-Ohio-2815, ¶ 62. The extent to which a trial court relies on a psychologist's testimony about a prior parental evaluation is a weight decision by the trier of fact. *In re S.J.*, 2d Dist. Montgomery No. 25551, 2013-Ohio-3653, at ¶ 35. We note too that a psychologist may be given up-to-date information on which to formulate current opinions. *In re Majors*, 12th Dist. Butler No. CA90-02-019, 1991 WL 124424, *2 (July 8, 1991). A permanent-custody determination should not be made primarily on the basis of the outdated evaluation if a parent's conditions have demonstrably changed since a psychological evaluation was completed. *In re S.C.*, 189 Ohio App.3d 308, 2010-Ohio-3394, 938 N.E.2d 390, ¶ 33-34 (4th Dist.). But an evaluation is not necessarily rendered incompetent solely by the occurrence of some subsequent changes. *See Rahe v. Rahe*, 1st Dist. Hamilton No. C-990719, 2000 WL 1299236, *3-4 (Sept. 15, 2000).

{¶ 26} Here, though Mother says that she has changed, we see no evidence that her conditions have demonstrably changed in a magnitude that would cause us to reverse the trial court's permanent-custody decision. *Compare In re A.M.*, 5th Dist. Holmes No. 10 CA 15, 2010-Ohio-6141, ¶ 21 (finding no basis on which to reverse the trial court's permanent custody decision where the mother challenged the psychologist's evaluation on the ground that it was ten months old at the time of trial, arguing that in the seven months before the evidentiary hearing

her situation had improved). To the extent that the trial court relied on the evidence of the psychologist's 11-month-old evaluation, this was a weight decision by the court. *Compare In re S.J.*, 2013-Ohio-3653, at ¶ 35 (saying the same where the father argued that the trial court erred by relying on a two-year-old evaluation when no updated evaluation was done).

**{¶ 27}** The second assignment of error is overruled.

### C. The Claim of Ineffective Assistance of Counsel

**{¶ 28}** Lastly, in the third assignment of error, Mother alleges that trial counsel rendered her ineffective assistance. "Claims of ineffective assistance of counsel are assessed against the two part test of *Strickland v. Washington* (1984) 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed.2d 674." *In re Lakes*, 149 Ohio App.3d 128, 2002-Ohio-3917, 776 N.E.2d 510, ¶ 30 (2d Dist.). The claimant first must show that "counsel's performance was deficient." *Strickland* at 687. The claimant then must show that "the deficient performance prejudiced the defense." *Id*.

**{¶ 29}** "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id*. at 688. The claimant must show that "counsel's representation fell below an objective standard of reasonableness." Id. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Id*. at 689, quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955). Mother points to five instances of counsel's representation that she says were objectively unreasonable.

**{¶ 30}** Mother contends that counsel failed to prepare properly to cross-examine the

psychologist and the mental-health counselor by not becoming familiar with the mental-health conditions-bipolar disorder, mood disorder, depression, anxiety-with which she was diagnosed. Mother concedes in her brief that "[i]t is *impossible to tell from the record* but counsel should have been familiar with all the diagnosed disorders so that a proper cross examination could be undertaken." (Emphasis added.) Appellant's Initial Brief, 30. The trial transcript shows only that counsel did not ask many questions about the conditions; it does not show that counsel was unprepared to ask questions or was unfamiliar with the conditions. Mother also contends that counsel should have asked about how her mental-health conditions might have affected her ability to comply with case-plan requirements. But this line of questioning would not have elicited evidence that would have helped Mother's case-just the opposite. Testimony that Mother's mental illnesses prevented her from completing the case plan would support a determination that "[c]hronic mental illness * * * of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child," R.C. 2151.414(E)(2), which would require the trial court to make R.C. 2151.414(E)'s parental-placement finding.

{¶ 31} Mother fails to overcome the presumption that counsel's cross-examination of the psychologist and mental-health counselor was sound trial strategy. *Compare In re S.W.*, 6th Dist. Lucas No. L-12-1073, 2012-Ohio-3610, ¶ 5 ("In this case, A.W. has failed to demonstrate that her attorney's actions were any more than acceptable trial strategy. Her attorney did not cross-examine the medical expert witnesses who testified about A.W.'s diagnostic mental health assessment and her drug and alcohol therapy * * *. A.W. has not demonstrated that cross-examination would have revealed any facts that would benefit A.W.'s case.").

{¶ 32} Mother next contends that counsel should have objected to testimony about the

children's adoptability. Given that, as we said above, the law does not plainly require expert testimony on adoptability, by not objecting to the adoptability testimony counsel cannot be said to have acted unreasonably.

{¶ 33} Mother contends that counsel should have subpoenaed her social worker to testify because "[u]ndoubtedly facts which were not in the social worker's notes would have been available to the Court." Appellant's Reply Brief, 2. And Mother contends that counsel should not have stipulated to the social worker's notes. But "[t]he mere statement that counsel failed to secure all the proper witnesses is without meaning absent a showing that this action was a violation of defense counsel's duty * * * and that the witnesses could have actually added some new and different testimony." *City of Dayton v. Pearson*, 2d Dist. Montgomery No. 6842, 1981 WL 2744, *2 (Apr. 1, 1981), citing *State v. Nabozny*, 54 Ohio St. 2d 195, 214, 375 N.E.2d 784 (1978). Here, Mother does not say what additional facts the social worker's testimony would have supported and whether those facts would be material, so we cannot say that counsel was unreasonable not to subpoena the social worker. *Compare In re Z.S.*, 4th Dist. Lawrence No. 10CA16, 2010-Ohio-5038, ¶ 35 (finding that the mother provided "absolutely nothing other than the bare speculation that her attorney could have, and should have, called more witnesses and cross-examined the guardian ad litem," and that the mother provided "no evidence that the outcome of the proceedings would have been different had [her] trial counsel called these unnamed witnesses or asked these unstated questions"); *In re N.H.*, 9th Dist. Summit No. 24355, 2008-Ohio-6617, ¶ 27 ("The father has maintained that his trial lawyer was ineffective for failing to ensure that his therapist testified at the permanent custody hearing, but he has not explained what her testimony would have been, nor has he demonstrated that her testimony would have

changed the outcome of the permanent custody hearing."). Indeed, it would appear that counsel acted in an eminently reasonable manner. Counsel could have believed that given the late stage of the social worker's pregnancy her supervisor would be able to give adequate testimony. When it became clear that the supervisor could not, counsel moved for a continuance so that the social worker could testify, which motion the trial court denied and with which we have found no error. So the only course left to counsel was to offer the notes in evidence.

{¶ 34} Mother finally contends that counsel's stipulation to the GAL report was improper. She says that the GAL should have been required to testify and be subject to cross-examination. As we found earlier, the GAL did testify and was cross-examined. And as we discussed, the GAL's written report was required to be submitted by statute, making counsel's stipulation to its admission irrelevant.

{¶ 35} Mother fails to show that counsel's performance was in any way deficient or prejudicial.

{¶ 36} The third assignment of error is overruled.


{¶ 37} Having overruled each of the assignments of error presented, the juvenile court's judgment is affirmed.

. . . . . . . . . . . . .


FROELICH, P.J., and DONOVAN, J., concur.



Copies mailed to:

Ryan A. Saunders
Richard L. Kaplan
D.W., Sr.
S.F.
Hon. Joseph N. Monnin