[Cite as *In re E.R.*, 2023-Ohio-1468.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ATHENS COUNTY

IN THE MATTER OF:              :
                              :
   E.R.,                      :          Case No. 22CA16
                              :
   Adjudicated Dependent Child.  :
                              :
                              :          <u>DECISION AND JUDGMENT</u>
                              :          <u>ENTRY</u>
                              :
                              :

---

**<u>APPEARANCES</u>**:

Christopher Bazeley, Cincinnati, Ohio, for Appellant.

Timothy L. Warren, Athens County Assistant Prosecuting Attorney, Athens, Ohio, for Appellee.

---

Smith, P. J.

{¶1} Appellant, J.B., appeals the trial court's decision that granted permanent custody of his child, E.R., to Athens County Children Services ("ACCS" or "the agency"). Appellant raises two assignments of error and argues that (1) the trial court's judgment is against the manifest weight of the evidence and (2) the trial court erred by failing to inform him of his right to appeal. For the reasons that follow, we do not find any merit to Appellant's

assignments of error. Therefore, we overrule his assignments of error and affirm the trial court's judgment.

FACTS

{¶2} On June 18, 2020, the agency filed a complaint that alleged the child is abused, neglected, and dependent and requested temporary custody of the child. The complaint alleged that the child's mother gave birth to the child at home and that Appellant did not contact emergency services to take the child to the hospital. Instead, Appellant contacted the maternal grandmother, who then called emergency services.

{¶3} At the hospital, the mother tested positive for amphetamines, methamphetamines, barbiturates, buprenorphine, and opiates.

{¶4} The agency also filed a motion for emergency custody of the child, which the trial court granted.

{¶5} On July 20, 2020, the court adjudicated the child dependent upon the parties' stipulation that drugs were found in the child's body at birth. The court dismissed the abuse and neglect allegations. The court subsequently placed the child in the agency's temporary custody.

{¶6} Nearly two years later the agency filed a motion to modify the disposition to permanent custody. At the permanent custody hearing, Athens County Sheriff's Detective Jen Williams testified that she received a

copy of a forensic interview of H.B., who is one of the mother's other children. In the interview, H.B. reported to a Child Advocacy Center worker that he had been sexually abused and identified Appellant as the perpetrator. Detective Williams stated that based upon her review of the interview she started an investigation. She explained that she first attempted to contact the mother because the mother allegedly witnessed some of the abuse. Because the detective was unable to reach the mother, she contacted Appellant.

{¶7} Detective Williams testified that Appellant initially seemed willing to talk to her and stated that he would need to arrange transportation. Later, however, Detective Williams learned that Appellant's attorney advised him not to meet with her for an interview. The detective stated that the case currently is closed due to a lack of information and that the file notes that if law enforcement officers receive additional information the case will be reopened.

{¶8} ACCS caseworker Maya Oshita testified as follows. The agency removed the child from the parents' custody about one week after his birth. The agency placed the child with a foster family, and the child has remained in that home since his removal. The child "does very well" in the foster home and has bonded with the foster parents and the other children who live

in the home.  The foster family would like to adopt the child if the court

grants the agency permanent custody of the child.

{¶9} The agency developed a case plan for the family that required

the mother to maintain stable housing, complete a substance abuse

assessment, submit to drug screens, and engage in any recommended

services or treatment programs.  The mother has not complied with the case

plan and has failed to maintain contact with the agency.

{¶10} The case plan required Appellant to maintain stable housing

and to obtain items needed to care for a young child.  Appellant currently

has a residence where he lives with his two teenaged children.  When Oshita

initially visited the residence one of the teenagers did not have a bed in his

bedroom but, instead, slept on a lawn chair.  Additionally, one of the

bedrooms had "a strong smell of urine."  Upon Oshita's next visit those

concerns no longer existed.

{¶11} When asked whether Appellant's home would be appropriate

for a toddler, Oshita responded that the residence is "sparse."  She stated that

the home has "a couple minor safety concerns," such as missing cabinet

locks and electrical outlet covers, that Appellant has been working on fixing.

Oshita explained that Appellant also needed to obtain baby gates, arrange a

safe sleeping environment for the child, and obtain other items needed to care for a young child.

{¶12} Oshita indicated that the agency would like to add a requirement to the case plan that Appellant obtain a mental health assessment so as to allay its concerns of possible sexual abuse. She explained that ACCS had investigated H.B.'s allegation and labeled the allegation "indicated," meaning "that there was some evidence to support the allegation." Oshita stated that because Appellant had been identified as the perpetrator in a sexual abuse investigation labeled "indicated," the agency would not consider placing the child in his custody.

{¶13} When Oshita asked Appellant to complete a mental health evaluation, Appellant stated that he would not complete a mental health assessment, denied the sexual abuse allegation, and did not believe completing a mental health assessment was necessary. Appellant informed Oshita that he believed that "something may have happened with those children," but "it was likely their father's friend, or roommate." Oshita was concerned that Appellant "suspected someone might be abusing a child sexually and had not reported that concern."

{¶14} Appellant has been visiting the child twice per week for two hours at a time. The agency has not moved the visits to be at home or off grounds due to the sexual abuse allegation being "indicated."

{¶15} Oshita did not recommend that the court place the child with Appellant due to the indicated sexual abuse allegation. She stated that she would be concerned for the child's safety.

{¶16} Appellant testified that he lives with his two teenaged boys which he obtained custody of in 2017. He explained that the court granted him custody of the boys after he completed a case plan that required him to remain drug and alcohol free for one year.

{¶17} Appellant stated that his residence is appropriate for a two-year-old child. He related that it has baby gates and that he intends to place a soft rug on the floor in one of the rooms so that the child has a place to play. Appellant further pointed out that he has been able to keep custody of his two teenaged boys by providing them with an appropriate environment.

{¶18} Deborah Murray, the child's guardian ad litem (GAL), stated that she favors placing the child in the agency's permanent custody. She expressed multiple concerns with Appellant serving as the child's caregiver. First, Appellant knew about the mother's drug use during pregnancy and lack of prenatal care but he did not think to report it to anyone.

Additionally, the agency had to prod Appellant to make the home appropriate and he did not recognize what to fix on his own. Thus, the GAL would be concerned that Appellant would not recognize how to maintain his home so that it would remain an appropriate environment for a young child.

{¶19} The GAL agreed with the agency's recommendation that Appellant should obtain a mental health assessment. She stated that Appellant had been angry at times during conversations with her and admitted that he has "some anger problems."[1]

{¶20} The GAL also believes that Appellant lacks initiative, which concerns her. She explained that if the child were placed with Appellant, no one would be around to tell Appellant what he needs to do to provide for the child. The GAL questioned whether Appellant would be able to recognize any issues and fix them on his own.

{¶21} On October 6, 2022, the trial court granted the agency permanent custody of the child. The court found that placing the child in the agency's permanent custody is in the child's best interest and that the child has been in the agency's temporary custody for 12 or more months of a consecutive 22-month period.

---

[1] We observe that a portion of the transcript containing the GAL's testimony is missing, so any additional explanation that the GAL had regarding Appellant obtaining a mental health assessment is not available.

{¶22} The court first evaluated the child's interactions and interrelationships:

> The minor child was born at home and went almost immediately into agency custody. The child has been in agency custody since that initial determination. The minor child appears to be functioning well within the foster family. Mother has failed to exercise visitation with the child during the Court case. Father has exercised visits during this case and most of those visits have gone well. However, Father had periods of time when visitation was sporadic which included cancelled visits. More importantly, child appears to do well in the foster home and appears to be bonded with that family. All contact between Father and child has occurred at the agency's visitation center and under agency supervision. [Father] has two older half-siblings in his custody. These children are significantly older than the minor child in this case. Behavior issues of those two older children could put the minor child at unnecessary risk.

{¶23} Next, the court considered the child's wishes. The court noted that the child is too young to directly express his wishes and that the GAL recommended that the court place the child in the agency's permanent custody.

{¶24} With respect to the child's custodial history, the court found that the child has been in the agency's custody since June 17, 2020, shortly after his birth, and that the child has been in the agency's custody for more than 12 months out of a 22-month period.

{¶25} The court additionally reviewed the child's need for a legally secure permanent placement and whether the child could obtain that type of placement without granting the agency permanent custody. The court observed:

> This two-year old child needs and deserves permanency which can only be accomplished with the termination of parental rights and an award of permanent custody to ACCS. Permanency is necessary for optimal development of the child and can best meet his needs for stability and consistency. While Father has made progress through his Case Plan, the progress is only made after encouraged or pushed by the agency or the Guardian ad Litem. That lack of initiative creates a substantial risk of neglect or dependency down the road if the child were returned to Father.

{¶26} The court further found that R.C. 2151.414(E)(10) applied as to the child's mother because the mother "has abandoned the minor child and has failed to engage with ACCS, utilize case plan services, or visit/contact the child since September 2021."

{¶27} Thus, the court granted the agency's permanent custody motion and placed the child in its permanent custody. This appeal followed.

## ASSIGNMENTS OF ERROR

I.  THE TRIAL COURT'S DECISION TERMINATING [APPELLANT'S] PARENTAL RIGHTS IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

II.     THE TRIAL COURT FAILED TO ADVISE
        [APPELLANT] OF HIS APPELLATE RIGHTS
        AT THE END OF THE HEARING.

ANALYSIS

{¶28} In his first assignment of error, Appellant argues that the trial court's permanent custody decision is against the manifest weight of the evidence. Specifically, he asserts that competent, credible evidence does not support the trial court's finding that placing the child in the agency's permanent custody is in the child's best interest.

STANDARD OF REVIEW

{¶29} A reviewing court generally will not disturb a trial court's permanent custody decision unless the decision is against the manifest weight of the evidence. *See In re R.M.*, 2013-Ohio-3588, 997 N.E.2d 169, ¶ 53 (4th Dist.). When an appellate court reviews whether a trial court's permanent custody decision is against the manifest weight of the evidence, the court " ' " 'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.' " ' " *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 20, quoting *Tewarson v. Simon*, 141 Ohio

App.3d 103, 115, 750 N.E.2d 176 (9th Dist.2001), quoting *State v.*

*Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v.*

*Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶30} In a permanent custody case, the ultimate question for a

reviewing court is "whether the juvenile court's findings * * * were

supported by clear and convincing evidence." *In re K.H.*, 119 Ohio St.3d

538, 2008-Ohio-4825, 895 N.E.2d 809, ¶ 43.  In determining whether a trial

court based its decision upon clear and convincing evidence, "a reviewing

court will examine the record to determine whether the trier of facts had

sufficient evidence before it to satisfy the requisite degree of proof." *State v.*

*Schiebel*, 55 Ohio St.3d 71, 74, 564 N.E.2d 54 (1990).  "Thus, if the children

services agency presented competent and credible evidence upon which the

trier of fact reasonably could have formed a firm belief that permanent

custody is warranted, then the court's decision is not against the manifest

weight of the evidence." *R.M.* at ¶ 55.

{¶31} Once the reviewing court finishes its examination, the court

may reverse the judgment only if it appears that the factfinder, when

resolving the conflicts in evidence, " 'clearly lost its way and created such a

manifest miscarriage of justice that the [judgment] must be reversed and a

new trial ordered.' " *Thompkins*, 78 Ohio St.3d at 387, quoting *Martin*, 20

Ohio App.3d at 175. A reviewing court should find a trial court's permanent custody decision against the manifest weight of the evidence only in the " 'exceptional case in which the evidence weighs heavily against the [decision].' " *Id.*, quoting *Martin* at 175.

PERMANENT CUSTODY FRAMEWORK

{¶32} R.C. 2151.414(B)(1) specifies that a trial court may grant a children services agency permanent custody of a child if the court finds, by clear and convincing evidence, that (1) the child's best interest would be served by the award of permanent custody, and (2) any of the following conditions applies:

> (a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
> (b) The child is abandoned.
> (c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
> (d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a

consecutive 22-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

(e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

{¶33} In the case at bar, the trial court found that R.C. 2151.414(B)(1)(d) applies. Appellant does not dispute this finding. Therefore, we do not address the issue.

{¶34} R.C. 2151.414(D)(1) requires a trial court to consider all relevant, as well as specific, factors to determine whether a child's best interest will be served by granting a children services agency permanent custody. The specific factors include: (1) the child's interaction and interrelationship with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the child's wishes, as expressed directly by the child or through the child's guardian ad litem, with due regard for the child's maturity; (3) the child's custodial history; (4) the child's need for a legally secure permanent placement and whether that type of placement can be

achieved without a grant of permanent custody to the agency; and (5) whether any factors listed under R.C. 2151.414(E)(7) to (11) apply.

{¶35} Determining whether granting permanent custody to a children services agency will promote a child's best interest involves a delicate balancing of "all relevant [best interest] factors," as well as the "five enumerated statutory factors." *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 57, citing *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, ¶ 56; *accord In re C.G.*, 9th Dist. Summit Nos. 24097 and 24099, 2008-Ohio-3773, ¶ 28; *In re N.W.*, 10th Dist. Franklin Nos. 07AP-590 and 07AP-591, 2008-Ohio-297, ¶ 19. However, none of the best interest factors requires a court to give it "greater weight or heightened significance." *C.F.* at ¶ 57. Instead, the trial court considers the totality of the circumstances when making its best interest determination. *In re K.M.S.*, 3d Dist. Marion Nos. 9-15-37, 9-15-38, and 9-15-39, 2017-Ohio-142, ¶ 24; *In re A.C.*, 9th Dist. Summit No. 27328, 2014-Ohio-4918, ¶ 46. In general, "[a] child's best interest is served by placing the child in a permanent situation that fosters growth, stability, and security." *In re C.B.C.*, 4th Dist. Lawrence Nos. 15CA18 and 15CA19, 2016-Ohio-916, ¶ 66, citing *In re Adoption of Ridenour*, 61 Ohio St.3d 319, 324, 574 N.E.2d 1055 (1991).

{¶36} In the case at bar, we do not believe that the trial court's best interest determination is against the manifest weight of the evidence. The agency presented substantial clear and convincing evidence that placing the child in its permanent custody would serve the child's best interest.

Child's Interactions and Interrelationships

{¶37} The trial court noted that Appellant attended supervised visits with the child and appropriately interacted with the child. The court further observed that "[m]ore importantly, [the] child appears to do well in the foster home and appears to be bonded with that family."

{¶38} Appellant faults the trial court for considering that all of his visits were supervised at the visitation center. He points out that the agency would not permit him to have unsupervised visits due to the sexual abuse allegation, which Appellant vehemently denies. Appellant argues that the agency's concern regarding the sexual abuse allegation is completely unfounded. In doing so, he points to Oshita's testimony and claims that Oshita testified that the allegation was "not substantiated." However, Oshita did not testify that the allegation was unsubstantiated. Instead, she explained that the agency could have found the allegation substantiated, indicated, or unsubstantiated and that the agency found the allegation involving Appellant to be indicated. Thus, Appellant's assertion that Oshita testified that the

allegation was unsubstantiated is inconsistent with the testimony presented at the permanent custody hearing.

### Child's Wishes

{¶39} The record shows that the child is far too young to be able to express his wishes directly to the court. The guardian ad litem recommended that the court grant the agency permanent custody of the child. *In re I.A.-W.*, 8th Dist. Cuyahoga No. 111217, 2022-Ohio-1766, ¶ 37; *In re S.M.*, 4th Dist. Highland No. 14CA4, 2014-Ohio-2961, ¶ 32 (both recognizing that R.C. 2151.414 permits juvenile courts to consider a child's wishes as child directly expresses or through the guardian ad litem).

### Custodial History

{¶40} The child has been in the agency's temporary custody since shortly after his birth and he has remained in the same foster home throughout the case. The child also has been in the agency's temporary custody for at least 12 months out of a consecutive 22-month period.

### Legally Secure Permanent Placement

{¶41} "Although the Ohio Revised Code does not define the term 'legally secure permanent placement,' this court and others have generally interpreted the phrase to mean a safe, stable, consistent environment where a child's needs will be met." *In re M.B.*, 4th Dist. Highland No. 15CA19,

2016-Ohio-793, ¶ 56, citing *In re Dyal*, 4th Dist. Hocking No. 01CA12, *9 (Aug. 9, 2001) (implying that "legally secure permanent placement" means a "stable, safe, and nurturing environment"); *see also In re K.M.*, 10th Dist. Franklin Nos. 15AP-64 and 15AP-66, 2015-Ohio-4682, ¶ 28 (observing that legally secure permanent placement requires more than stable home and income but also requires environment that will provide for child's needs); *In re J.H.*, 11th Dist. Lake No. 2012-L-126, 2013-Ohio-1293, ¶ 95 (stating that mother unable to provide legally secure permanent placement when she lacked physical and emotional stability and that father unable to do so when he lacked grasp of parenting concepts); *In re J.W.*, 171 Ohio App.3d 248, 2007-Ohio-2007, 870 N.E.2d 245, ¶ 34 (10th Dist.) (Sadler, J., dissenting) (stating that a legally secure permanent placement means "a placement that is stable and consistent"); Black's Law Dictionary 1354 (6th Ed. 1990) (defining "secure" to mean, in part, "not exposed to danger; safe; so strong, stable or firm as to insure safety"); *Id.* at 1139 (defining "permanent" to mean, in part, "[c]ontinuing or enduring in the same state, status, place, or the like without fundamental or marked change, not subject to fluctuation, or alteration, fixed or intended to be fixed; lasting; abiding; stable; not temporary or transient"). Thus, "[a] legally secure permanent placement is more than a house with four walls. Rather, it generally encompasses a stable

environment where a child will live in safety with one or more dependable adults who will provide for the child's needs." *M.B.* at ¶ 56.

{¶42} In the case before us, the trial court determined that Appellant would be unable to provide the child with a legally secure permanent placement due to Appellant's lackadaisical attitude about complying with the case plan requirements. The court found that although Appellant made progress on his case plan, the agency or the child's GAL had to encourage or push Appellant to comply with the case plan. The court determined that Appellant's "lack of initiative creates a substantial risk of neglect or dependency down the road if the child were returned to" him.

{¶43} Appellant disagrees with the trial court's finding that he lacked initiative and that agency caseworkers had to prod him into complying with the case plan. Appellant contends that "he was motivated to gain custody over E.R. and was doing the best he could being a single father with limited income." He asserts that he complied with the case plan requirements and that the trial court based its decision primarily upon the GAL's testimony, which Appellant claims was highly subjective and based upon a high standard of living.

{¶44} We find nothing in the record to indicate that the trial court's factual finding that the agency and the GAL had to encourage or push

Appellant to comply with the case plan is against the manifest weight of the evidence. Instead, the testimony presented at the hearing shows that the agency or the GAL needed to inform Appellant what he needed to do to make his home appropriate, rather than Appellant recognizing the items needed to make his home appropriate. For instance, the GAL testified that Appellant did not appear to have adequate food in the home, considering that he had two teenaged boys living with him, and that she had to tell him that he needed to obtain more food for the family. She stated that after she brought the matter to Appellant's attention, Appellant obtained more food for the family.

{¶45} Moreover, although Appellant emphasizes that he completed the case plan requirements, as we have observed many times in the past, a parent's case plan compliance may be a relevant, but not necessarily conclusive, factor when a court considers a permanent custody motion. *In re B.P.*, 4th Dist. Athens No. 20CA13, 2021-Ohio-3148, ¶ 57; *In re T.J.*, 4th Dist. Highland No. 2016-Ohio-163, ¶ 36, citing *In re R.L.*, 9th Dist. Summit Nos. 27214 and 27233, 2014-Ohio-3117, ¶ 34 ("although case plan compliance may be relevant to a trial court's best interest determination, it is not dispositive of it"); *In re S.C.*, 8th Dist. Cuyahoga No. 102349, 2015-Ohio-2280, ¶ 40 ("Compliance with a case plan is not, in and of itself,

dispositive of the issue of reunification"); *accord In re K.M.*, 4th Dist. Ross

No. 19CA3677, 2019-Ohio-4252, ¶ 70, citing *In re W.C.J.*, 4th Dist. Jackson

No. 14CA3, 2014-Ohio-5841, ¶ 46 ("[s]ubstantial compliance with a case

plan is not necessarily dispositive on the issue of reunification and does not

preclude a grant of permanent custody to a children's services agency"); *In*

*re N.L.*, 9th Dist. Summit No. 27784, 2015-Ohio-4165, ¶ 35 ("substantial

compliance with a case plan, in and of itself, does not establish that a grant

of permanent custody to an agency is erroneous").  "Indeed, because the trial

court's primary focus in a permanent custody proceeding is the child's best

interest, 'it is entirely possible that a parent could complete all of his/her

case plan goals and the trial court still appropriately terminate his/her

parental rights.' "  *W.C.J.* at ¶ 46, quoting *In re Gomer*, 3d Dist. Wyandot

Nos. 16-03-19, 16-03-20, and 16-03-21, 2004-Ohio-1723, ¶ 36; *accord In re*

*K.J.*, 4th Dist. Athens No. 08CA14, 2008-Ohio-5227, ¶ 24 ("when

considering a R.C. 2151.414(D)(1)(d) permanent custody motion, the focus

is upon the child's best interests, not upon the parent's compliance with the

case plan").  Thus, a parent's case plan compliance will not preclude a trial

court from awarding permanent custody to a children services agency when

doing so is in the child's best interest.  *Id.*

{¶46} Here, even if Appellant complied with the approved case plan requirements, the agency also recommended that Appellant undergo a mental health evaluation to address its concern regarding the indicated sexual abuse allegation. Oshita testified that as long as the abuse allegation remained indicated, the child could not be placed in Appellant's custody. Appellant, however, refused to complete a mental health evaluation.

{¶47} The GAL additionally thought that a mental health evaluation was needed due to some angry outbursts she had noticed when talking to Appellant and due to Appellant's admission that he has anger issues. Appellant, however, refused to complete a mental health evaluation. Appellant's refusal to complete a mental health evaluation has set a barrier that prevents the agency from attempting to place the child in his custody, or even from attempting unsupervised visits. This refusal also supports the trial court's finding that Appellant cannot provide the child with a legally secure permanent placement.

{¶48} Appellant nevertheless argues that his situation is similar to the circumstances in *In re S.C.*, 189 Ohio App.3d 308, 2010-Ohio-3394, 938 N.E.2d 390 (4th Dist.). In that case, we reversed a trial court's decision to place a child in an agency's temporary custody primarily because the trial court relied upon an outdated, two-year-old psychological report. *Id.* at ¶ 33

(stating that trial court's permanent custody decision "should not be made primarily on the basis of a two-year-old psychological evaluation when conditions regarding both [the parent's] sobriety and his home environment have demonstrably changed"). Here, however, the trial court did not rely upon an outdated, two-year-old psychological report. Instead, the trial court cited current conditions to support its decision.

{¶49} In sum, the totality of the circumstances supports the trial court's finding that placing the child in the agency's permanent custody is in the child's best interest. The child has been in the agency's temporary custody for the vast majority of his young life and has lived with the same foster family throughout that time. The evidence shows that the child is bonded with the family and integrated into their household. The trial court could have reasonably determined that even if Appellant's physical home environment meets the child's basic needs, disrupting the child's life by removing him from the only home that he has ever known and placing him in a home where Appellant may or may not be able to recognize the needs of a young child would not be in the child's best interest. Moreover, the agency remained concerned about the indicated sexual abuse allegation and Appellant's refusal to complete a mental health assessment. Based upon all

of the foregoing reasons, we are unable to find that the trial court's best-interest determination is against the manifest weight of the evidence.

{¶50} Accordingly, we overrule Appellant's first assignment of error.

SECOND ASSIGNMENT OF ERROR

{¶51} In his second assignment of error, Appellant asserts that the trial court erred by failing to notify him of his right to appeal. Appellant points out that Juv.R. 34(J) requires trial courts, at the end of dispositional hearings, to advise parties of their right to appeal contested proceedings. Appellant contends that the court's error prejudiced his ability to file proper documentation with his pro se notice of appeal.

{¶52} In the case at bar, at the end of the permanent custody hearing the court indicated that it would take the matter under advisement. The court did not mention that Appellant would have a right to appeal the court's decision if the court granted the agency permanent custody of the child. When the court issued its written decision it stated that the decision did not affect any party's right to appeal. The decision also included language to notify the parties that the decision was a final, appealable order. Even if the trial court erred, however, we note that Appellant perfected his appeal within 30 days of the trial court's judgment and successfully sought appointed counsel. Moreover, given that Appellant has appealed, no remedy exists.

Thus, the issue is moot. *See, e.g., In re Carrie O.*, 6th Dist. Huron No. H-05-007, 2006-Ohio-858 (finding failure-to-advise error moot due to existence of appeal); *In re Brown*, 4th Dist. Scioto No. 98CA2598, 1999 WL 305225, *4 (May 10, 1999) (concluding that failing to advise juvenile of right to appeal did not prejudice juvenile, who filed a pro se appeal); *see generally Bryan v. Chytil*, 4th Dist. Ross No. 20CA3723, 2021-Ohio-4082, ¶ 185, quoting *Miner v. Witt*, 82 Ohio St. 237, 92 N.E. 21, syllabus (1910) (stating that a case is moot when an event occurs that "renders it impossible for the court to grant any relief").

{¶53} Accordingly, based upon the foregoing reasons, we overrule Appellant's second assignment of error.

## CONCLUSION

{¶54} Having overruled Appellant's two assignments of error, we affirm the trial court's judgment.

                                                                    JUDGMENT AFFIRMED.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Athens County Common Pleas Court, Juvenile Division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hess, J. and Wilkin, J. concur in Judgment and Opinion.


For the Court,


_____

Jason P. Smith
Presiding Judge

### **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**