[Cite as *In re T.M.*, 2023-Ohio-4475.]

**IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
LOGAN COUNTY**

IN RE:                                              CASE NO. 8-23-06

    T.M.,

ADJUDGED ABUSED AND
DEPENDENT CHILD.                        **O P I N I O N**

[THEODORE M. - APPELLANT]

**Appeal from Logan County Common Pleas Court
Juvenile Division
Trial Court No. 21 CS 04**

**Judgment Affirmed**

**Date of Decision:  December 11, 2023**

**APPEARANCES:**

    *Alison Boggs* **for Appellant**

    *Stacia L. Rapp* **for Appellee**

**ZIMMERMAN, J.**

{¶1} This is an appeal from the March 2, 2023 judgment entry of the Logan County Court of Common Pleas, Juvenile Division, which terminated the parental rights of the appellant, Theodore M. ("Theodore"), father of T.M., and granted permanent custody of T.M. to Logan County Children's Services (the "agency"). For the reasons that follow, we affirm.

{¶2} Theodore and Ashley P. ("Ashley") are the natural and biological parents of T.M., born 2020. On January 21, 2021, the agency filed a complaint alleging T.M. to be an abused child under R.C. 2151.031(D) and dependent child pursuant to R.C. 2151.04(A) and (C). The agency sought an *ex parte* order of emergency temporary custody of T.M., which the trial court granted. Then, the trial court appointed T.M. a Guardian Ad Litem ("GAL") and held a shelter-care hearing wherein the trial court determined that probable cause existed to believe that T.M. was an abused and dependent child; that it was in the children's best interest to be placed into the temporary custody of the agency; and that the agency had made "[r]easonable efforts to eliminate the need for the removal of [T.M.] from the home based upon the emergency nature of the circumstances." (Doc. No. 34).

{¶3} Following the adjudicatory hearings held on February 10, 2021 and March 1, 2021, the trial court found T.M. to be an abused and dependent child.[1]

---

[1] The agency moved orally to strike the dependency allegation under R.C. 2151.04(A). (Doc. No. 43).

{¶4} The trial court held a dispositional hearing on April 7, 2021, and thereafter ordered that T.M. remain in the temporary custody of the agency. The trial court found that the agency had made reasonable efforts to eliminate the need for the continued removal of T.M. from the home, and that it was not in T.M's best interest to return home to his parents.

{¶5} On March 21, 2022, the agency filed a motion for permanent custody. Ashley filed an answer to the agency's motion and a motion for legal custody on March 30, 2022. On October 7, 2022, Theodore filed his motion for legal custody and requested an updated forensic-parenting evaluation, which the agency opposed. The trial court granted Theodore's motion (in part) continuing the permanent-custody hearing and permitting him to schedule the updated evaluation.

{¶6} On October 12, 2022, the GAL filed a permanent-custody-GAL report that was later supplemented on January 10, 2023.

{¶7} After the permanent-custody hearings conducted on January 17 and 18, 2023, the trial court granted permanent custody of T.M to the agency by a judgment entry journalized on March 2, 2023.

{¶8} Theodore filed a timely notice of appeal and raises two assignments of error for our review.

## First Assignment of Error

**The Trial Court Erred In Accepting [Theodore's] Stipulation That The Agency Should Be Given Permanent Custody When The Child's Mother Was Not Making A Reciprocal Stipulation.**

{¶9} In his first assignment of error, Theodore argues that the trial court erred by accepting his agreement to consent to the granting of permanent custody (of T.M.) to the agency. Specifically, Theodore argues that the trial court *modified* its Juv.R. 29(D) colloquy (to him) thereby rendering his consent to permanent custody of T.M. uninformed and invalid. Moreover, he argues that the trial court failed to *verbally* advise him (in open court) of his right to appeal.

### *Standard of Review*

{¶10} "The standard for appellate review in a permanent-custody case is whether the trial court had clear and convincing evidence to make an award of permanent custody." *In re Terrence*, 6th Dist. No. L-05-1018, 2005-Ohio-3600, ¶ 86, citing *In re Hiatt*, 86 Ohio App.3d 716, 725 (4th Dist. 1993). The "clear and convincing evidence" standard is a higher degree of proof than the "preponderance of the evidence" standard generally used in civil cases, but is less stringent than the "beyond a reasonable doubt" standard used in criminal cases. *State v. Schiebel*, 55 Ohio St.3d 71, 74, (1990). On appeal from an order terminating parental rights, an appellate court will not reverse the trial court's judgment if, upon a review of the record, it determines that the trial court had sufficient evidence to satisfy the clear-

and-convincing-evidence standard. *In re Wise*, 96 Ohio App.3d 619, 626 (9th Dist. 1994).

{¶11} In reaching its determinations regarding permanent custody, the trial court must safeguard certain fundamental rights of parents. *Terrence*, *supra*, at ¶ 87. "It is well recognized that the right to raise a child is an 'essential' and 'basic' civil right." *In re Franklin*, 3d Dist. Nos. 9-06-12 and 9-06-13, 2006-Ohio-4841, ¶ 9, quoting *In re Hayes*, 79 Ohio St.3d 46, 48 (1997) (citation omitted). The Supreme Court of Ohio has held that a parent "must be afforded every procedural and substantive protection the law allows." *In re Hayes*, *supra*, quoting *In re Smith*, 77 Ohio App.3d 1, 16 (6th Dist. 1991). Where parental rights are permanently terminated, "it is of utmost importance that the parties fully understand their rights and that any waiver is made with full knowledge of those rights and the consequences which will follow." *Elmer v. Lucas Cty. Children Serv. Bd.*, 36 Ohio App.3d 241, 245 (6th Dist. 1987); *Terrence*, *supra*.

*Analysis*

{¶12} Here, the *adjudicatory hearings* of T.M. were held on February 10, 2021 and March 1, 2021 after which the trial court determined T.M. to be an abused and dependent child pursuant to R.C. 2151.031(D) and R.C. 2151.04(C). Conversely, the agency's motion for permanent custody was filed under R.C. 2151.413 and R.C. 2151.414 seeking to modify the trial court's temporary-custody order to permanent custody. Permanent-custody proceedings are dispositional in

nature and governed by Juv.R. 34 *not* Juv.R. 29. *In re C.M.*, 10th Franklin No. 07AP-933, 2008-Ohio-2977, ¶ 35, citing *In re Williams*, 10th Dist. Franklin No. 03AP-1007, 2004-Ohio-678, ¶ 7. Since permanent-custody proceedings do not concern adjudication, and instead are dispositional matters, Juv.R. 29 is not applicable to the facts before us. *In re C.M.* at ¶ 36 ("Accordingly, because a hearing to modify temporary custody to permanent custody is a dispositional hearing, Juv.R. 29 is inapposite."). Consequently, Theodore's argument regarding the trial court's professed failure to comply with Juv.R. 29 is wholly without merit under the facts presented.

{¶13} Next, we address Theodore's argument that the trial court judge failed to verbally advise him of his right to appeal in open court. Importantly, Juv.R. 34(J) requires "where any part of the proceeding was contested," the trial court shall advise the parties *at the conclusion of the dispositional hearing* of their right to appeal. Notably, Ashley is the only parent who contested the proceeding. After the commencement of the permanent-custody hearing, Theodore was sworn-in and gave testimony regarding his willingness to consent to the permanent-custody proceedings. Thereafter, he and his trial counsel left the courtroom and neither of them participated in the remainder of the proceeding. Hence, if there was any error here, it can be interpreted as invited error since the trial court was unable to advise

Theodore of his right to appeal at the conclusion of the hearing due to his absence from the hearing.[2]

{¶14} Additionally, as we noted in our recitation of the procedural history of this case, Theodore filed a timely notice of appeal. Consequently, since Theodore's appeal was timely made he has suffered no prejudice from the trial courts alleged failure, and this issue is moot. *In the Matter of Holtgreven*, 3d Dist. Hancock No. 5-95-7, 1995 WL 368841, *5 (June 23, 1995), citing *In re Haas*, 45 Ohio App.2d 187, 190 (5th Dist. 1975). *In the Matter of E.R.*, 4th Dist. Athens No. 22CA16, 2023-Ohio-1468, ¶ 52.

{¶15} Accordingly, Theodore's first assignment of error is overruled.

### Second Assignment of Error

### [Theodore] Received Ineffective Assistance Of Counsel.

{¶16} In his second assignment of error, Theodore argues that his trial counsel was ineffective. Specifically, he asserts that his trial counsel was deficient by advising him to consent to permanent custody and by not challenging the Agency's motion for permanent custody.

*Standard of Review*

{¶17} The statutory right to counsel is guaranteed in all stages of juvenile-court proceedings under Chapter 2151 of the Revised Code. R.C. 2151.352. *See*

---

[2] Nevertheless, we note that the trial court did include a *written* advisement of his right to appeal in the judgment entry following the dispositional hearing.

*also* Juv.R. 4(A). "Additionally, the right to counsel '"also arises from the guarantees of due process and equal protection contained within the"'" Ohio Constitution and Constitution of the United States." *In re A.D.*, 3d Dist. Seneca No. 13-22-12, 2023-Ohio-2442, ¶ 22, quoting *In re J.C.*, 10th Dist. Franklin, 2023-Ohio-778, ¶ 28 citing *In re Brooks*, 10th Dist. Franklin Nos. 04AP-164, 04AP-165, 04AP-201, and 04AP-202, 2004-Ohio-3887, ¶ 24, citing *State ex rel. Heller v. Miller*, 61 Ohio St.2d 6 (1980), paragraph two of the syllabus. The right to counsel includes the right to the effective assistance of counsel. *In re I.R.*, 8th Dist. Cuyahoga, 2021-Ohio-3103, ¶ 83; *In re D.L.S.*, 3d Dist. Hancock Nos. 5-15-04 and 5-15-05, 2015-Ohio-2809, ¶ 34, citing *In re Moore*, 3d Dist. Hardin, 153 Ohio App.3d 641, 2003-Ohio-4250, ¶ 28 and *In re Brooks* at ¶ 24. "[W]e apply the same test as the test for ineffective assistance of counsel in criminal cases announced in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984), and adopted by the Supreme Court of Ohio in *State v. Smith*, 17 Ohio St.3d 98, 100 (1985). *In re D.L.S.* at ¶ 34, citing *Moore* at ¶ 29.

{¶18} Establishing ineffective assistance of counsel requires the party to demonstrate: (1) a deficient performance by counsel–that counsel's performance fell below an objective standard of reasonable representation, and (2) that counsel's errors prejudiced the party–a reasonable probability that but for counsel's errors, the outcome would have been different. *Strickland*, 466 U.S. at 669, 694, 104 S.Ct. at 2068, 2054-2056; *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraphs two and

three of the syllabus; *In re I.R.* at ¶ 84. "[R]easonable probability" is "probability sufficient to undermine confidence in the outcome." *Strickland* at 694, 104 S.Ct. at 2068.

*Analysis*

{¶19} Here, Theodore argues that his attorney was deficient based upon: 1) certain statements his attorney made to Theodore relative to his consent to the agency's permanent-custody motion; 2) that his counsel failed to argue factors favorable to him including his completion of the case plan; 3) that counsel failed to consider that Theodore's below-average intelligence prevented him from understanding the finality of his decision; and lastly, 4) that counsel's discussion with the trial court regarding preparation of the judgment entry outside of Theodore's presence is somehow indicative that he (Theodore) was not in favor of consenting to the agency's permanent-custody motion.

{¶20} Significantly, and because it is dispositive of all four portions of Theodore's argument, even if we assume without deciding that his trial counsel's performance fell below an objective standard of reasonable representation, Theodore, nonetheless, cannot carry his burden with respect to the prejudice prong. That is–he cannot establish that the trial court would have granted his legal-custody motion had his trial counsel advised him to contest the agency's motion. Specifically, since the alleged perpetrator of T.M.'s physical abuse was never identified by the parents (who had exclusive physical care and custody of T.M. at

the time that he received his injuries[3]), and would be contrary to the forensic-parenting evaluation that recommended that *neither parent* could provide a safe and secure environment for T.M. *See In re A.D.*, 2023-Ohio-2442, at ¶ 45. Consequently, Theodore has failed to carry his burden as to the prejudice prong of his ineffective-assistance-of-counsel claim.

**{¶21}** Accordingly, Theodore's second assignment of error is overruled.

**{¶22}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**MILLER, P.J. and WILLAMOWSKI, J., concur.**

**/hls**

---

[3] Following a normal skeletal survey performed on T.M. at three days old, T.M. presented at his pediatrician's office just shy of his two-month well-check, with bruising on his left arm and Ashley (his mother) described a seizure-like episode the preceding Sunday for which T.M. had not received any medical treatment. A subsequent skeletal survey revealed signs of two healing fractures in T.M.'s right leg and one in his left ankle.